UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GRETCHEN THOMAS<br><br>*Plaintiff*,<br><br>v.<br><br>BILL NELSON<br>NASA ADMINISTRATOR<br><br><br><br>*Defendant* | Case No.: 24-1634<br><br>JURY TRIAL DEMANDED<br>CLASS ACTION COMPLAINT |

## COMPLAINT

1) COMES NOW, Plaintiff, Gretchen Thomas, by and through her attorney hereby state the following in support of her Complaint and Jury Demand against Defendant Bill Nelson, Administrator, National Aeronautics and Space Administration (NASA), and allege:

## PARTIES

2) Ms. Gretchen Thomas is a GS-14 Manned Test Director at NASA Johnson Space Center (JSC) in Houston, Texas.

3) Defendant Bill Nelson is an individual who serves as the Administrator of NASA. As the most senior leader at NASA, Mr. Nelson is responsible for implementing the COVID-19 vaccine policy and bears ultimate responsibility for the Department's actions against Plaintiff. Mr. Nelson's work location is NASA headquarters in Washington D.C.

## JURISDICTION AND VENUE

1

4) This Court has jurisdiction, and venue is proper, pursuant to 42 U.S.C. § 2000e-5(f)(3) because the relevant employment records are stored at NASA headquarters in Washington D.C.

## STATEMENT OF FACTS

5) Gretchen Thomas is a GS-14 Manned Test Director at NASA Johnson Space Center (JSC) in Houston, Texas who has been in this position for 13 years.

6) She holds a Bachelor of Science degree in Mechanical Engineering and a Master's degree in Space Studies.

7) She has been a NASA JSC civil servant for 36 years.

8) As a Manned Test Director, she test with human subjects in space suits and vacuum chambers, and she is required to know and apply the laws associated with test subjects' right to privacy, protecting their personal health information, and their rights to informed consent.

9) Her performance ratings are always fully successful, and she has been praised for her ability to work well with others, successfully complete extremely challenging work, lead her test operations team, and successfully lead large multi-million-dollar space-flight projects in space suit and vehicle life support systems.

10) She has received hundreds of individual and group achievement awards throughout her career.

11) She learned of the federal government's COVID-19 vaccine mandate by watching the President's address which was later confirmed and enforced via various emails from all levels of NASA management.

12) On July 29, 2021, the President of the United States Joe Biden announced that every federal worker would be required to attest to their COVID-19 shot status and that anyone who would not attest would be required to wear a mask, physically distance from all other employees and visitors, comply with weekly or twice weekly screening testing, and be subject to restrictions on official travel.

13) On August 13, 2021, NASA HQ sent an email, listing Azhar Rafiq of the Office of the Chief Health and Medical Officer as the Point of Contact, stating that there will be a Certification of Vaccination Status required and that supervisors will be ensuring that this form is completed by all employees.

14) On August 17, 2021, the JSC Center Director Vanessa Wyche sent an email for "Guidance to all employees on confirming vaccination status" for using the certification for vaccination status form.

15) This email stated that "the information provided on this form is protected by federal privacy regulation and NASA has no plans to use it to determine who is allowed on site at a NASA facility. However, anyone working on site who is not fully vaccinated will be required to be tested weekly for COVID-19 before coming onsite."

16) On 18 February 2022, Ms. Thomas received an email from her supervisor Jonathan Homan, EC4/ Branch Chief, Systems Test Branch, with the subject "FW: Center Update – Important Information," notifying her branch members of the following:

   a. **All unvaccinated personnel are required to test** before coming on-site per the highlighted section of Vanessa Wyche's email below. (I was hoping to

push to the following week, but EA is requiring implementation starting this Tuesday, 2/22/22.)

      b.      I do not know how the reimbursement is going to happen other than they plan to use the attached form.

      c.      JSC is working a "how-to" guide and will be sending out.

17) On 19 February 2022, she received an email from Julie Kremer White, EA1/Chief, Engineering Directorate, with the subject "*Welcoming 2022 with more change...*" that stated that starting the next week, unvaccinated workers would have to test.

18) As soon as she learned about the vaccine requirement, Ms. Thomas began to research its development and safety.

19) Through that process, she learned that the COVID-19 vaccine had been developed and tested using the fetal stem cell line from an aborted baby.

20) She is a life-long Christian who has always held the belief that life begins at conception and that abortion is murder and is abhorrent to God in every situation, no matter what good could be derived from the act.

21) By receiving the vaccine, Ms. Thomas would be in violation of God's command against murder.

22) She furthermore learned that there were questions about whether or not the vaccine was a gene-therapy, and that there were reports of adverse reactions associated with the vaccine.

23) She could not, take a gene therapy for any reason nor inject potentially harmful products in her body, as she believes that her body is a temple for the LORD.

24) She immediately applied for a Religious Exemption to the COVID-19 vaccines, submitted on October 5, 2021.

25) Initially she thought that she would be willing to test to avoid termination from the career that she loved, but in the early months of 2022, she realized that all of the mandates to report personal health information, take the vaccine, and test if not vaccinated violated her understanding of the requirements to protect personal health information and employees' rights to informed consent.

26) She saw herself and others being treated unfairly for their religious beliefs regarding the vaccine.

27) She was appalled at the way she saw her managers, co-workers, and even her Agency Administrator Bill Nelson talking about unvaccinated people, wishing they would die and wanting them fired, blaming them for prolonging the pandemic or making other people sick even though the CDC stated that the vaccine did not prevent transmission of the virus.

28) It is Ms. Thomas's sincerely held religious belief that any participation, voluntary or involuntary, in any discriminatory act is immoral and unethical and is a violation of her conscience.

29) She submitted a Religious Exemption to the testing mandate on March 17, 2022, and a discrimination complaint against NASA for its testing policy on March 11, 2022.

30) NASA never made any determination on either of her religious exemption requests and eventually dismissed them for everyone once the vaccination mandate was rescinded on May 12, 2023.

31) As a result of filing a religious exemption to the vaccine and testing mandates, Ms. Thomas was under constant threat of denial of physical access to JSC, termination, discipline, loss of ability to travel and loss of educational or developmental opportunities.

32) On a daily basis, she was singled out for not complying with the testing mandate, was ordered to submit to testing and wear a mask even though she had submitted a religious exemption to it, and was required to share her personal health information.

33) Because NASA never accepted or denied either of her exemption requests and offered reasonable accommodation, she experienced constant anxiety over losing her job and developed high blood pressure because of the stress.

34) On March 11, 2022, Ms. Thomas initiated an EEO complaint process.

35) On June 20, 2022, she filed a class complaint with her Agency.

36) The EEOC dismissed that complaint and the underlying individual complaint on February 8, 2024, and she received the Final Agency Decision on March 4, 2024.

## COUNT I
## RELIGIOUS FREEDOM RESTORATION ACT
## 42 U.S.C. §2000bb *et seq.*

37) Plaintiffs restate the foregoing paragraphs as set forth fully herein.

38) RFRA prohibits the federal government from "substantially burden[ing] a person's exercise of religion unless the Government demonstrates that application of the burden to the person is the least restrictive means of furthering a compelling interest." *Singh v. Berger*, 56 F.4th 88, 92 (D.C. Cir. 2022). *See also* 42 U.S.C. § 2000bb-1(b)(1)-(2)).

39) A plaintiff makes out a *prima facie* claim under RFRA "by proving the following elements: (1) a substantial burden imposed by the federal government on a (2) sincere (3) exercise of religion." *Sample v. Lappin*, 479 F. Supp. 2d 120, 122 (D.D.C. 2007) (*citing Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001)).

40) The court's scrutiny extends only to whether Plaintiffs "sincerely hold a particular belief and whether the belief is religious in nature." *Sample*, 479 F. Supp. 2d at 123 (citing Sample v. Lappin, 424 F. Supp. 2d at 193 (internal citations omitted)).

41) If a plaintiff successfully makes out a prima facie case, the defendant then must show that the burden placed on the religious exercise is permissible. *Id. (citing Gartrell v. Ashcroft,*

191 F. Supp. 2d 23, 37 (D.D.C. 2002) (applying burden-shifting analysis under RFRA)).

42) Here, Ms. Thomas has sincere religious beliefs against the vaccine and testing that she shared with the Agency.

43) The Agency never challenged Ms. Thomas's beliefs or suggested they were not sincere or not religious.

**44)** Defendants burdened the exercise of Ms. Thomas's beliefs first by attempting to force her to take the vaccine under constant and coercive pressure, then doing the same with testing, and by failing to act on or adjudicate her requests for reasonable accommodations to the vaccine or for testing.

## COUNT II

**VIOLATION OF TITLE VII 42 U.S.C. § 2000e,** *et seq.*
**RELIGIOUS DISCRIMINATION: FAILURE TO ACCOMMODATE**

45) Plaintiff restates the foregoing paragraphs as set forth fully herein.

46) Under Title VII, a plaintiff alleging religious discrimination based on a failure to accommodate must show that:

> (1) she had a bona fide religious belief, the practice of which conflicted with an employment requirement; (2) that she informed defendant of the belief; and (3) she was disciplined for failure to comply with the conflicting employment requirement.

*Philbrook*, 107 S. Ct. at 370 (citing *Turpen v. Missourri-Kansas-Texas R. Co.*, 736 F.2d 1022, 1026 (5th Cir. 1984)).[1]

---

[1] The Circuit Court for the District of D.C has not articulated a framework for an employee's claim of failure to accommodate religious beliefs although it has looked to other courts for input. *See e.g., Lurensky v. Wellinghoff*, 167 F. Supp. 3d 1, 14 (D.D.C. 2016). However, at least one District Court argues that the showing of the third element that an adverse employment action (such as discipline or termination) occurred, may not be required and suggests Court's requiring it may be mistaken. *Prescott-Harris v. Fanning*, 2016 U.S. Dist. LEXIS 171360, *35-36 (D.D.C. Dec. 12, 2016). For purposes of this Complaint, it is not necessary to argue what Plaintiffs will ultimately need to prove since Plaintiffs are not required to plead a *prima facie* case at this point. *L'Association des Americans Accidentels v. United States Dep't of State*, 2023 U.S. LEXIS 23360 *10, (D.D.C. February 10, 2023) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007) ("[t]o survive a motion to dismiss plaintiff must plead sufficient factual allegations to state a claims to relieve that is plausible in its face")).

47) The Civil Rights Act of 1964, 42 U.S.C 2000e-2(a) (1) prohibits discrimination on the basis of religion. The Supreme Court has interpreted this provision to include an affirmative duty to accommodate religious belief:

> Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not 'to fail or refuse to hire or discharge any individual ... because of such individual's' 'religious observance and practice.' An employer is surely entitled to have, for example, a no-headwear policy as an ordinary matter. But when an applicant requires an accommodation as an 'aspec[t] of religious ... practice,' it is no response that the subsequent 'fail[ure] ... to hire' was due to an otherwise-neutral policy. Title VII requires otherwise-neutral policies to give way to the need for an accommodation.

*Equal Emp't Opportunity Comm'n v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 784 (2015) (internal citations omitted).

48) The statutory framework for determining reasonable accommodation further requires an interactive process and participation by both the employer and the employee. *Philbrook*, 479 U.S. at 69 (stating that, consistent with the goals expressed in the legislative history of the religious accommodation provision, "courts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business"); *see also, Rashad v. Wash. Metro. Area Transit Auth.*, 945 F. Supp. 2d, 152 (D.D.C., 2013) ("It is clear [defendant] engaged in an extensive interactive process to accommodate [plaintiff's] requests and ultimately gave her the accommodation she wanted.").

49) In this case, Ms. Thomas has bona fide religious beliefs that conflict with the vaccine and testing.

50) Ms. Thomas made NASA aware of her beliefs by filing requests for religious accommodations to the vaccine and testing.

51) Ms. Thomas was made to test anyway, and was treated materially worse than her

co-workers.

52) She experienced constant fear and anxiety as a result of this failure to accommodate.

## PRAYER FOR RELIEF

1. Plaintiffs respectfully request that the Court:

   a. Hold unlawful and set aside the Defendant's discriminatory COVID-19 vaccination and testing policies;

   b. Award appropriate compensatory and punitive damages for injuries suffered;

   c. Award reasonable attorneys' fees and allowable costs, including under the Equal Access to Justice Act;

   d. Grant Plaintiffs such other and further relief to which they are justly entitled at law and in equity.

## JURY TRIAL

A jury trial is requested in this matter.

Dated: June 3, 2024

Respectfully Submitted,

_____
E. Scott Lloyd
Virginia Bar # 76989
Lloyd Law Group, PLLC
15 Chester Street
Front Royal, VA 22630
(540) 823-1110
scott@lloydlg.com
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that I will cause the foregoing to be served upon the Agency.

_____
SCOTT LLOYD