**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRISTOPHER BARTH, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-01634-RDM |
| BILL NELSON<br>NASA ADMINISTRATOR, | |
| Defendant. | |

**DEFENDANT BILL NELSON'S MOTION TO DISMISS**
**INDIVIDUAL-CAPACITY CLAIM FOR DAMAGES**

Defendant Bill Nelson respectfully moves to dismiss the personal-capacity claim for damages against him pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This motion is filed on behalf of the defendant in his personal capacity only. The basis for this motion is set forth in the accompanying memorandum.

Dated: December 18, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch

REGINALD M. SKINNER
Senior Trial Attorney, Torts Branch

*/s/ Shmuel Bushwick*
SHMUEL BUSHWICK
Trial Attorney
NJ Bar 073632013, under LCvR 83.2
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-0401
E-mail: Shmuel.Bushwick@usdoj.gov
*Counsel for Bill Nelson in his Individual Capacity*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CHRISTOPHER BARTH, et al.,

               Plaintiffs,

      v.

BILL NELSON
NASA ADMINISTRATOR,

              Defendant.

Civil Action No. 1:24-cv-01634-RDM

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BILL NELSON'S MOTION
<u>TO DISMISS THE INDIVIDUAL-CAPACITY CLAIM FOR DAMAGES</u>**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch

REGINALD M. SKINNER
Senior Trial Attorney, Torts Branch

SHMUEL BUSHWICK
Trial Attorney
NJ Bar 073632013, under LCvR 83.2
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-0401
Fax: (202) 616-4314
E-mail: Shmuel.Bushwick@usdoj.gov

*Counsel for Bill Nelson in his Individual Capacity*

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

PROCEDURAL BACKGROUND .......................................................................................... 5

STANDARD OF REVIEW ...................................................................................................... 5

    A.   Rule 12(b)(1).................................................................................................................. 5

    B.   Rule 12(b)(6).................................................................................................................. 6

ARGUMENT............................................................................................................................ 7

I.    The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Personal-Capacity
RFRA Claim. ....................................................................................................................... 7

II.    The Administrator is Entitled to Qualified Immunity. ................................................. 11

    A.   The Qualified Immunity Framework.......................................................................... 11

        1.   Plaintiffs do not plausibly allege the Administrator personally violated their rights.  13

        2.   Plaintiffs fail to plausibly allege that the COVID-19 policies substantially burdened
their exercise of religion. .............................................................................................. 15

        3.   Plaintiffs fail to plausibly allege the violation of a clearly established right under
RFRA. ........................................................................................................................... 20

III.    Money Damages against the Administrator is Not "Appropriate Relief" in this
Particular Case.................................................................................................................. 23

CONCLUSION ...................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Ajaj v. Fed. Bureau of Prisons*,
  25 F.4th 805 (10th Cir. 2022) ............................................................................................ 12
*Anderson v. Creighton*,
  483 U.S. 635 (1987) ..................................................................................................... 11, 22
*Archdiocese of Wash. v. Washington Metro. Area Transit Auth.*,
  281 F. Supp. 3d 88 (D.D.C. 2017) ..................................................................................... 16
*Archdiocese of Wash. v. Washington Metro. Area Transit Auth.*,
  897 F.3d 314 (D.C. Cir. 2018) ........................................................................................... 16
*Arenas v. Calhoun*,
  922 F.3d 616 (5th Cir. 2019) .............................................................................................. 23
*Arzamendi v. Austin*,
  No. 4:23-CV-0770-P, 2024 WL 1641962 (N.D. Tex. Apr. 16, 2024) ................................. 19
*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) .................................................................................... 11, 12, 15, 21
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 6, 7, 13
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................... 6, 7
*Brown v. Bureau of Prisons*,
  No. 3:14-cv-681 (RNC), 2017 WL 1234104 (D. Conn. Mar. 31, 2017) ............................ 21
*Bundy v. Sessions*,
  812 F. App'x 1 (D.C. Cir. 2020) ........................................................................................ 14
*Burke v. Lappin*,
  821 F. Supp. 2d 244 (D.D.C. 2011) ................................................................................... 10
*Cameron v. Thornburgh*,
  983 F.2d 253 (D.C. Cir. 1993) ........................................................................................... 14
*Coclough v. Akal Sec., Inc.*,
  303 F. Supp. 3d 123 (D.D.C. 2018) ..................................................................................... 7
*Cooper v. True*,
  No. 16-cv-02900-MJD-KMM, 2017 WL 6372651 (D. Minn. Dec. 12, 2017) ................... 21
*Correctional Servs. Corp. v. Malesko*,
  534 U.S. 61 (2021) ............................................................................................................. 24
*Ctr. for Biological Diversity v. United States Int'l Dev. Fin. Corp.*,
  585 F. Supp. 3d 63 (D.D.C. 2022) ....................................................................................... 6
*Curry v. Gonzales*,
  No. 07-cv-0199, 2007 WL 3275298 (D.D.C. Nov. 6, 2007) .............................................. 14
*D.C. v. Wesby*,
  583 U.S. 48 (2018) ....................................................................................................... 20, 21
*Daugherty v. Sheer*,
  891 F.3d 386 (D.C. Cir. 2018) ........................................................................................... 20
*Davila v. Gladden*,
  777 F.3d 1198 (11th Cir. 2015) .......................................................................................... 12

*De Béarn v. United States*,
237 A.3d 105 (D.C. 2020)........................................................................................................ 17

*Delta Air Lines, Inc. v. Export-Import Bank*,
85 F. Supp. 3d 250 (D.D.C. 2015) ............................................................................................ 6

*Donovan v. Vance*,
576 F. Supp. 3d 816 (E.D. Wash. 2021) ................................................................................. 22

*Driever v. United States*,
No. CV 19-1807 (TJK), 2021 WL 1946391 (D.D.C. May 14, 2021)...................................... 22

*Dugan v. Rank*,
372 U.S. 609 (1963) ................................................................................................................... 8

*Dupree v. Jefferson*,
666 F.2d 606 (D.C. Cir. 1981) ................................................................................................ 10

*Fazaga v. FBI*,
965 F.3d 1015 (9th Cir. 2020)........................................................................................... 12, 21

*Feds for Med. Freedom v. Austin*,
No. 3:23-CV-05490 DGE-RJB, 2024 WL 2922804 (W.D. Wash. June 10, 2024) .............. 9, 10

*Feds for Med. Freedom v. Biden*,
581 F. Supp. 3d 826 (S.D. Tex. 2022) ........................................................................... 3, 18, 22

*Feds for Med. Freedom v. Garland*,
No. 4:23-cv-1817, 2024 WL 185958 (S.D. Tex. Apr. 29, 2024)........................................ 9, 10

*Ferguson v. Owen*,
No. CV 21-02512 (RC), 2022 WL 2643539 (D.D.C. July 8, 2022)........................................ 17

*Fernandez-Torres v. Watts*,
No. 2:16-cv-24, 2017 WL 9485591 (S.D. Ga. Jan. 30, 2017) ................................................ 21

*Frederick Douglass Found., Inc. v. D.C.*,
531 F. Supp. 3d 316 (D.D.C. 2021) .................................................................................. 15, 16

*Gary v. Long*,
59 F.3d 1391 (D.C. Cir. 1995) .................................................................................................. 7

*Grand Lodge of Fraternal Ord. of Police v. Ashcroft*,
185 F. Supp. 2d 9 (D.D.C. 2001) .............................................................................................. 6

*Guam v. Guerrero*,
290 F.3d 1210 (9th Cir. 2002)................................................................................................. 16

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ........................................................................................................... 11, 12

*Hedgpeth v. Rahim*,
893 F.3d 802 (D.C. Cir. 2018) ................................................................................................ 11

*Henderson v. Kennedy*,
253 F.3d 12 (D.C. Cir. 2001) ............................................................................................. 16, 17

*Henley v. Simpson*,
527 F. App'x 303 (5th Cir. 2013) ................................................................................ 8, 9, 10, 24

*Hettinga v. United States*,
677 F.3d 471 (D.C. Cir. 2012) .................................................................................................. 7

*Hueter v. Kruse*,
No. 1:20-cv-03686 (TNM), 2022 WL 823066 n.5 (D.D.C. Mar. 18, 2022)............................ 14

*Idaho v. Coeur d'Alene Tribe of Idaho*,
521 U.S. 261 (1997) ................................................................................................................... 9

*Indian River Cnty. v. Rogoff*,
  254 F. Supp. 3d 15 (D.D.C. 2017) ................................................................................ 6
*Kaemmerling v. Lappin*,
  553 F.3d 669 (D.C. Cir. 2008) ............................................................................. 16, 20
*Klaassen v. Trs. of Ind. Univ.*,
  549 F. Supp. 3d 836 (N.D. Ind. 2021) ....................................................................... 17
*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) ..................................................................................... 7
*Lebron v. Rumsfeld*,
  670 F.3d 540 (4th Cir. 2012) ................................................................................ 12, 21
*Luder v. Endicott*,
  253 F.3d 1020 (7th Cir. 2001) ..................................................................................... 9
*Mahoney v. Doe*,
  642 F.3d 1112 (D.C. Cir. 2011) ................................................................................. 17
*Mahoney v. U.S. Marshals Serv.*,
  454 F. Supp. 2d 21 (D.D.C. 2006) ....................................................................... 15, 16
*Morrison v. Fed. Bureau of Prisons*,
  No. 21-CV-02860 (BAH), 2023 WL 172202 (D.D.C. Jan. 12, 2023) ......................... 6
*Mullenix v. Luna*,
  577 U.S. 7 (2015) ................................................................................................. 20, 21
*Navy Seal 1 v. Biden*,
  574 F. Supp. 3d 1124 (M.D. Fla. 2021) ..................................................................... 22
*Palmieri v. United States*,
  896 F.3d 579 (D.C. Cir. 2018) ............................................................................. 12, 22
*Patel v. Bureau of Prisons*,
  125 F. Supp. 3d 44 (D.D.C. 2015) ............................................................................. 14
*Pearson v. Callahan*,
  555 U.S. 223 (2009) ................................................................................................... 12
*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) .................................................................................................. 8, 9
*Perrier-Bilbo v. United States*,
  954 F.3d 413 (1st Cir. 2020) ...................................................................................... 17
*Potts v. Holt*,
  617 F. App'x 148 (3d Cir. 2015) ................................................................................ 12
*Rann v. Chao*,
  154 F. Supp. 2d 61 (D.D.C 2001) ................................................................................ 6
*Rasul v. Myers*,
  563 F.3d 527 (D.C. Cir. 2009) ............................................................................. 12, 21
*Reichle v. Howards*,
  566 U.S. 658 (2012) ................................................................................................... 20
*SACE S.p.A. v. Republic of Paraguay*,
  243 F. Supp. 3d 21 (D.D.C. 2017) ............................................................................... 5
*Sandoval v. U.S. Dep't of Justice*,
  322 F. Supp. 3d 101 (D.D.C. 2018) ............................................................................. 6
*Saucier v. Katz*,
  533 U.S. 194 (2001) ............................................................................................. 13, 15

*Schmidt v. U.S. Capitol Police Bd.*,
  826 F. Supp. 2d 59 (D.D.C. 2011) ............................................................................ 5, 6
*Sossamon v. Texas*,
  563 U.S. 277 (2011) ...................................................................................................... 8, 23
*Tangreti v. Bachmann*,
  983 F.3d 609 (2d Cir. 2020) ............................................................................................ 13
*Tanzin v. Tanvir*,
  592 U.S. 43 (2020) ..................................................................................... 7, 12, 23
*Taylor v. Nelson*,
  2022 U.S. App. LEXIS 21352 (5th Cir. August 2, 2022) ........................................... 24
*Taylor v. Reilly*,
  685 F.3d 1110 (D.C. Cir. 2012) ...................................................................................... 12
*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*,
  450 U.S. 707 (1981) ........................................................................................................ 16
*United States v. Bauer*,
  84 F.3d 1549 (9th Cir. 1996)........................................................................................... 19
*Walden v. Ctrs. for Disease Control & Prevention*,
  669 F.3d 1277 (11th Cir. 2012)....................................................................................... 16
*Webman v. Fed. Bureau of Prisons*,
  441 F.3d 1022 (D.C. Cir. 2006) ......................................................................... 7, 8, 10
*Wilson v. Layne*,
  526 U.S. 603 (1999) ........................................................................................................ 22
*Ziglar v. Abbasi*,
  582 U.S. 120 (2017) ................................................................................................. 20, 24

**Statutes, Rules, Regulations, and Other Authorities**

42 U.S.C. § 2000bb.......................................................................................................... 1, 15
Exec. Order 14,043, 86 Fed. Reg. 50,959 (Sept. 9, 2021)............................................... 2
Exec. Order 14,099, 88 Fed. Reg. 30,891 (May 9, 2023).......................................... 4, 18
Fed. R. Civ. P. 12(b)(1).......................................................................................................... 5
Fed. R. Civ. P. 12 (b)(6)......................................................................................................... 6
Fed. R. Evid. 201 ................................................................................................................... 2
NASA COVID-19 Response Plan & Guidelines for a Safe Workplace, NASA (Dec. 6, 2022),
  *available at* https://www.nasa.gov/wp-content/uploads/2023/07/nasa-covid-safety-plan-
  update-12.06.22-1.pdf. .............................................................................................. 3, 18
President Joe Biden, Remarks by President Biden Laying Out the Next Steps in Our Effort to Get
  More Americans Vaccinated and Combat the Spread of the Delta Variant (July 29, 2021),
  *available at* https://www.whitehouse.gov/briefing-room/speeches-
  remarks/2021/07/29/remarks-by-president-biden-laying-out-the-next-steps-in-our-effort-to-
  get-more-americans-vaccinated-and-combat-the-spread-of-the-delta-variant/.......................... 2

**INTRODUCTION**

As Administrator of the National Aeronautics and Space Administration ("NASA"), Bill Nelson is the highest-ranking official at NASA. In Plaintiff Gretchen Thomas's original complaint (ECF No. 3), she sought money damages from the Administrator in his personal capacity for no apparent reason other than he was NASA's chief executive officer during the agency's response to the COVID-19 pandemic. Administrator Nelson moved to dismiss the personal capacity claim against him on December 5, 2024.  ECF No.12.

This First Amended Complaint was filed on December 6, 2024. ECF No. 13. Aside from adding three new plaintiffs, this amended complaint features principally the same allegations as those raised in Ms. Thomas's original complaint. In particular, Plaintiffs assert a single claim for damages against the Administrator in his personal capacity for an alleged violation of the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, *et seq.* They seek to hold the Administrator personally liable in damages for NASA's implementation of COVID-19 vaccination, testing, and masking policies, alleging that these policies burdened their exercise of religion in violation of RFRA. Plaintiffs fail, however, to plausibly allege any conduct personally taken by the Administrator that violated their rights under RFRA. Instead, it appears Plaintiffs named the Administrator as a defendant in this case simply because of the office he holds. That is not a valid basis for imposing personal damages liability upon a government official. As demonstrated below, Plaintiffs' personal-capacity claim is barred by the doctrines of sovereign and qualified immunity. Moreover, even apart from Plaintiffs' failure to plausibly allege the Administrator's personal involvement in any RFRA violation, the Administrator is entitled to qualified immunity because Plaintiffs fail to plausibly allege facts showing that NASA's COVID-19 policies burdened their exercise of religion in any way.

For these reasons, the Court should dismiss the personal-capacity RFRA claim under Count One under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## BACKGROUND

Plaintiffs are NASA employees.  Am. Compl. ¶¶ 2-5, ECF No. 13.  Plaintiffs Barth, Culley, and Thomas allege that they possessed sincerely held religious beliefs that prevented them from taking a COVID-19 vaccine. *Id.* at ¶ 10, page 3; ¶¶ 16-18, page 4; and ¶¶ 14-17, page 5.[1]  Plaintiff Effinger, in contrast, does not identify any sincerely held religious belief that motivated him to abstain from receiving the vaccine.

On July 29, 2021, the President announced that the Executive Branch would implement measures to require federal employees to attest to their vaccination status, and to otherwise test if they have not been vaccinated. *See* President Joe Biden, Remarks by President Biden Laying Out the Next Steps in Our Effort to Get More Americans Vaccinated and Combat the Spread of the Delta Variant (July 29, 2021), *available at* https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/07/29/remarks-by-president-biden-laying-out-the-next-steps-in-our-effort-to-get-more-americans-vaccinated-and-combat-the-spread-of-the-delta-variant.[2] On September 9, 2021, the President issued Executive Order 14,043, which instructed federal agencies to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all . . . Federal employees, with exceptions only as required by law." Exec. Order 14,043, 86 Fed. Reg.

---

[1]  Confusingly, the First Amended Complaint has a set of numbered paragraphs 10 through 26 that begin on page 3.  Another set of paragraphs 10 through 26 begins on page 5.  Where necessary for clarity, this brief specifies the paragraph number along with the applicable page.

[2] The Court may take judicial notice of Executive Branch statements pursuant to Federal Rule of Evidence 201, which authorizes a court to "judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 6 n.1 (D.D.C. 2021) (quoting Fed. R. Evid. 201(b)).

50,989, 50,990 (Sept. 9, 2021).  Plaintiffs each applied for religious exemptions to the vaccination requirement. Am. Compl. at ¶ 9; ¶ 15, page 4; ¶¶ 23-24, page 4; and ¶ 18, page 5.

On January 21, 2022, the United States District Court for the Southern District of Texas issued a nationwide preliminary injunction prohibiting the government from "implementing or enforcing Executive Order 14043." *Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826, 836–37 (S.D. Tex. 2022), *vacated and remanded*, 30 F.4th 503 (5th Cir. 2022), *reh'g en banc granted*, *opinion vacated*, 37 F.4th 1093 (5th Cir. 2022), *on reh'g en banc*, 63 F.4th 366 (5th Cir. 2023), *and aff'd*, 63 F.4th 366 (5th Cir. 2023). In light of that injunction, NASA suspended its vaccination requirement and it put a pause on adjudicating requests for exemptions. NASA COVID-19 Response Plan & Guidelines for a Safe Workplace, NASA (Dec. 6, 2022), *available at* https://www.nasa.gov/wp-content/uploads/2023/07/nasa-covid-safety-plan-update-12.06.22-1.pdf.[3]

On February 17, 2022, NASA Headquarters announced a testing requirement for unvaccinated employees. Ex. 1, Email from NASA Headquarters, dated Feb. 17, 2022. Under that requirement, unvaccinated employees would be required to test negative and report the result to their supervisor. *Id.*

Barth alleges that "his supervisor informed him that he could not come on-site to work if he did not test with an approved COVID-19 vaccine." Am. Compl. at ¶ 11, page 3.  Barth says "he felt he had no choice but to submit to uncomfortable / painful and discriminatory testing." *Id.* ¶ 12, page 3.  Culley alleges that rather than physically report to work and submit to COVID-19 testing,

---

[3] In accordance with Federal Rule of Evidence 201, the Court may take judicial notice of an agency's policies and procedures and other information posted on its official public website. *See Kelleher v. Dream Catcher, L.L.C.*, 221 F. Supp. 3d 157, 160 n.2 (D.D.C. 2016) (citing *Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 34 (D.D.C. 2014)).

he took two days of personal leave. *Id*. at ¶ 20, page 4. He alleges that other NASA employees "who did not have his religious beliefs did not have to test, although they could also spread COVID-19." *Id.* ¶ 21, page 4. Effinger alleges that in June 2022, he requested a religious exemption from the COVID-19 testing requirement, which NASA never adjudicated. *Id*. at ¶ 24, page 4. Effinger says the COVID-19 testing policy caused him to miss one on-site meeting. *Id*. at ¶ 25, page 4.

Thomas alleged in her Equal Employment Opportunity ("EEO") complaint that she physically reported to work on February 23, 2022, February 24, 2022, March 11, 2022, and March 12, 2022, without having been vaccinated or tested. Ex. 2, EEO Compl. (Excerpt). Thomas was not told to leave, and she never alleges that she was disciplined. *Id.* On March 13, 2022, the Center announced it suspended the testing requirement for unvaccinated employees due to the Center's "Low" COVID-19 status. Ex. 3, Email from Wyche to Civil Servants, dated Mar. 13, 2022. Nonetheless, four days later on March 17, 2022, Thomas submitted a request for a religious exemption from the testing mandate. Am. Compl. at ¶ 22, page 6.

On May 9, 2023, the President issued Executive Order 14,099, which ended the vaccination requirement and repealed Executive Order 14,043. Exec. Order 14,099, 88 Fed. Reg. 30,891 (May 9, 2023).

Plaintiffs allege that NASA never adjudicated the religious exemption requests submitted by Culley, Effinger, and Thomas and dismissed the requests for all employees on or around May 12, 2023. Am. Compl. ¶ 15, page 4; ¶¶ 23-24, page 4; ¶ 23, page 6.   Barth does not state whether NASA acted on his request.  Plaintiffs allege that the Administrator, "[a]s the most senior leader at NASA," "is responsible for implementing the COVID-19 vaccine policy and bears ultimate responsibility for the Department's actions against Plaintiff [*sic*]." *Id.* at ¶ 6. Plaintiffs' only other

4

factual allegation specific to the Administrator is that Thomas observed "managers, co-workers, and even her Agency Administrator Bill Nelson talking about unvaccinated people, wishing they would die and wanting them fired, blaming them for prolonging the pandemic or making other people sick even though the CDC stated that the vaccine did not prevent transmission of the virus." *Id.* at ¶ 20, page 6.

## PROCEDURAL BACKGROUND

On March 11, 2022, Thomas made initial contact with an EEO counselor. Am. Compl. ¶ 27. On June 20, 2022, she filed a class complaint with NASA. *Id.* ¶ 28. On February 8, 2024, the Equal Employment Opportunity Commission ("EEOC") dismissed both the individual complaint and class complaint. *Id.* ¶ 29. Thomas received the Final Agency Decision on March 4, 2024. *Id*.

On June 3, 2024, Thomas filed suit in this Court. ECF No. 1. On June 6, 2024, Thomas filed an errata to the Complaint in which she included addresses for herself and the Administrator and recaptioned her complaint as a class action; she made no substantive changes to the originally filed complaint. ECF No. 3. Thereafter, counsel for the Administrator in his official and personal capacities filed motions to dismiss the claims against him. ECF Nos. 11, 12.  The First Amended Complaint was filed on December 6, 2024, adding three new plaintiffs (Barth, Culley, and Effinger) but otherwise alleging the same facts and legal theories against the Administrator. *Id.* This motion to dismiss is filed on behalf of the Administrator in his personal capacity only.

## STANDARD OF REVIEW

### A. Rule 12(b)(1)

Dismissal under Fed. R. Civ. P. 12(b)(1) is appropriate when a court lacks subject-matter jurisdiction over a plaintiff's claim. *See Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 64 (D.D.C. 2011); *SACE S.p.A. v. Republic of Paraguay*, 243 F. Supp. 3d 21, 43 (D.D.C. 2017)

5

(dismissing under Rule 12(b)(1) because the defendant was immune under the Foreign Sovereign Immunities Act). The plaintiff bears the burden of establishing subject-matter jurisdiction. *Schmidt*, 826 F. Supp. 2d at 65; *Morrison v. Fed. Bureau of Prisons*, No. 21-CV-02860 (BAH), 2023 WL 172202, at *3 (D.D.C. Jan. 12, 2023). Because of its jurisdictional nature, "the court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Rule 12(b)(6)." *Schmidt*, 826 F. Supp. 2d at 65; *see also Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001). When reviewing a motion under Rule 12(b)(1), the court accepts as true the factual allegations in the complaint but is "not required, however, to accept inferences unsupported by the facts or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C 2001), *aff'd as modified*, 346 F.3d 192 (D.C. Cir. 2003). In addition, "[w]hen reviewing a challenge under Rule 12(b)(1), 'the court may consider documents outside the pleadings to assure itself that it has jurisdiction.'" *Ctr. for Biological Diversity v. United States Int'l Dev. Fin. Corp.*, 585 F. Supp. 3d 63, 69 (D.D.C. 2022) (quoting *Sandoval v. U.S. Dep't of Justice*, 322 F. Supp. 3d 101, 104 (D.D.C. 2018)); *see also Indian River Cnty. v. Rogoff*, 254 F. Supp. 3d 15, 18 (D.D.C. 2017) (same); *Delta Air Lines, Inc. v. Export-Import Bank*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015) (same).

### B. Rule 12(b)(6)

Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a complaint fails to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[T]he court need not accept inferences drawn

6

by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The factual allegations, "although assumed to be true, must still 'be enough to raise a right to relief about the speculative level.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). The pleading must do more than offer "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I.      The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Personal-Capacity RFRA Claim.

In Count I, Plaintiffs seek compensatory and punitive damages for an alleged violation of RFRA. Am. Compl. at ¶¶ 30-37, 46.a. Plaintiffs can only recover money damages against the Administrator in his personal capacity. *Compare Tanzin v. Tanvir*, 592 U.S. 43, 52 (2020) (holding that RFRA authorizes monetary damages against government officials in their individual-capacities in appropriate circumstances) *with Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006) (holding that RFRA does not waive the federal government's sovereign immunity for damages).  As a result, although Plaintiffs do not specify in their Complaint whether they asserts their RFRA claim against the Administrator in his official or personal capacity, the Administrator treats this claim as having been brought against him in his personal capacity.[4]

Plaintiffs' individual capacity RFRA claim is barred by sovereign immunity. The allegations demonstrate that Plaintiffs' RFRA claim is actually a challenge to official policy and

---

[4] Title VII claims can never run against government officials in their individual capacities. *See Coclough v. Akal Sec., Inc.*, 303 F. Supp. 3d 123, 132 (D.D.C. 2018) (Howell, J.); *see also Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995). For this reason, any personal-capacity Title VII claim against the Administrator is subject to dismissal.

therefore presents a dispute against the federal government, which itself cannot be sued for damages under RFRA. *See Sossamon v. Texas*, 563 U.S. 277, 286-88 (2011) (interpreting language identical to RFRA in the Religious Land Use and Institutionalized Persons Act); *see also Webman,* , 441 F.3d at 1026 ("We therefore hold that RFRA does not waive the federal government's sovereign immunity for damages."). The Supreme Court has long recognized that "a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)). Litigants cannot make an "end run" around these principles of sovereign immunity merely by naming government officials individually. *See Henley v. Simpson*, 527 F. App'x 303, 307 (5th Cir. 2013) (per curiam). This, however, is precisely what Plaintiffs attempt here.

The Fifth Circuit's decision in *Henley* demonstrates why such a claim cannot stand. In *Henley*, former highway patrol officers sued state officials in their individual capacities under the Fair Labor Standards Act ("FLSA") and 42 U.S.C. § 1983 to recover overtime wages. 527 F. App'x at 303-04. The court assumed that the FLSA, like RFRA, allows individual capacity suits against public officials for damages. *Id.* at 306. However, because the plaintiffs asserted that the state's *policy* of requiring them to train and care for their service canines while off duty was unconstitutional, a money judgment against the officials would have "'compel[led] the [State]' to revise" its policy. *Id.* at 307 (quoting *Pennhurst*, 465 U.S. at 101 n.11). The court therefore dismissed the plaintiffs' monetary claims and observed that, although sovereign immunity generally does not bar claims against individuals, "application of that rule without context could elevate 'empty formalism' over the principles undergirding sovereign immunity." *Id.* at 308

(quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997)); *see also e.g.*, *Luder v. Endicott*, 253 F.3d 1020, 1024 (7th Cir. 2001) (dismissing claims where the effect of a FLSA suit against individual officials was deemed "identical to a suit against the state").

Federal courts have dismissed RFRA cases nearly identical to this case for lack of subject matter jurisdiction after concluding that an award against the individual defendants would "expend itself on the public treasury or domain." *Pennhurst*, 465 U.S. at 101 n.11. Most recently, the U.S. District Court for the Western District of Washington dismissed RFRA claims commenced by current and former Department of Defense civilian employees in the consolidated cases *Feds for Med. Freedom v. Austin* and *LeBret v. Austin* for lack of subject matter jurisdiction as the "effect of monetary damages judgment would be that it would compel the Government to act." *Feds for Med. Freedom v. Austin*, No. 3:23-CV-05490 DGE-RJB, 2024 WL 2922804, at *6 (W.D. Wash. June 10, 2024) ("If a monetary judgment is entered against the Individual Defendants for their crafting, sharing, and following guidance to comply with Executive Order 14043, the government would 'have no choice but to indemnify Defendants; otherwise, the risk of personal liability for implementing . . . policy would guarantee no rational official would assume' the Individual Defendants' official positions.") (quoting *Henley*, 527 F. App'x at 307); *see also Feds for Med. Freedom v. Garland*, No. 4:23-cv-1817, 2024 WL 185958, at *4 (S.D. Tex. Apr. 29, 2024). ("As in *Henley*, Plaintiffs assert only that the policy the Individual Capacity Defendants implemented was unlawful. Therefore, Plaintiffs' claims against the Individual Capacity Defendants are entitled to dismissal on sovereign-immunity grounds.") (internal citations omitted); *Thornton v. Blinken*,

9

No. 1:23-cv-00266 (PTG/IDD) (E.D. Va. Nov. 16, 2023) Motions' Hearing Transcript at 14:4-10 (attached as Exhibit 4) and *Thornton* Order (attached as Exhibit 5).[5]

This Court should follow the reasoning in *Henley*, *Austin*, *Garland*, and *Thornton* and reject Plaintiffs' "end run" around sovereign immunity. As with the RFRA claims in *Austin*, *Garland*, and *Thornton*, as well as the FLSA claim in *Henley*, Plaintiffs here seek money damages from a high-ranking government official as a means of challenging official government policies. *See* Am. Compl. at ¶¶ 6, 36-37. This is underscored by the fact that the First Amended Complaint lacks any specific allegations concerning the Administrator, other than his general oversight of NASA and a vague accusation that he spoke disapprovingly of unvaccinated people. Moreover, if high-ranking officials such as the Administrator can be sued for damages over official policy decisions with nationwide effects, the Government would have "no choice" but to indemnify because such individuals could not possibly personally satisfy the judgments. *See Henley*, 527 F. App'x at 307. That is particularly so here—as it was in *Austin*, *Garland*, and *Thornton*—because Plaintiffs purport to bring a class action, which may potentially encompass many more plaintiffs, *see* Am. Compl. at page 1 (listing the matter as a "Class Action Complaint"), who would similarly seek monetary damages from the Administrator.

Accordingly, this Court should construe Plaintiffs' RFRA claim as an official capacity claim, which it is in all but name, and dismiss the claim on sovereign immunity grounds. *Henley*, 527 F. App'x at 307; *Austin*, 2024 WL 2922804; *Garland*, 2024 WL 185958; *Thornton*, No. 1:23-cv-00266; *see also Webman*, 441 F.3d at 1026; *Burke v. Lappin*, 821 F. Supp. 2d 244, 247 (D.D.C.

---

[5] In accordance with Federal Rule of Evidence 201, the Court may take judicial notice of related proceedings in other courts. *See Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981).

2011) (dismissing under Rule 12(b)(1) because sovereign immunity barred inmate's RFRA claim against former BOP director and three other BOP officials).

## II.   The Administrator is Entitled to Qualified Immunity.

The Administrator is entitled to dismissal on the basis of qualified immunity. First, Plaintiffs fail to allege a plausible claim for relief. The First Amended Complaint fails to plausibly allege any facts showing that the Administrator personally engaged in conduct that violated Plaintiffs' rights under RFRA.   Second, even apart from Plaintiffs' failure to allege the Administrator's personal involvement in any RFRA violation, the Administrator is entitled to qualified immunity because the First Amended Complaint fails to plausibly allege that the COVID-19 vaccination and testing policies substantially burdened Plaintiffs' exercise of religion.

### A. The Qualified Immunity Framework.

Courts have long recognized that individual capacity damages suits against federal officials give rise to "substantial social costs," particularly "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit [government] officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *see also Hedgpeth v. Rahim*, 893 F.3d 802, 806 (D.C. Cir. 2018) ("The purpose of the doctrine is to protect officials 'from undue interference with their duties and from potentially disabling threats of liability' in civil damages actions.") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)). The doctrine of qualified immunity shields government officials from personal liability to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. Qualified immunity thus affords officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). And because qualified immunity is designed to shield officials from the

11

burdens of litigation, it should be resolved "at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Qualified immunity applies to both constitutional claims and federal statutory claims, *see Harlow*, 457 U.S. at 818, and the defense is available to defendants sued under RFRA. *See, e.g.*, *Rasul v. Myers*, 563 F.3d 527, 533 n.6 (D.C. Cir. 2009); *Ajaj v. Fed. Bureau of Prisons*, 25 F.4th 805, 813 (10th Cir. 2022); *Fazaga v. FBI*, 965 F.3d 1015, 1061 (9th Cir. 2020), *rev'd and remanded on other grounds*, 595 U.S. 344 (2022); *Davila v. Gladden*, 777 F.3d 1198, 1210 (11th Cir. 2015); *Potts v. Holt*, 617 F. App'x 148, 150-51 (3d Cir. 2015); *Lebron v. Rumsfeld*, 670 F.3d 540, 557 (4th Cir. 2012); *see also Tanzin v. Tanvir*, 592 U.S. 43, 51 n* (2020) (assuming without deciding that qualified immunity applies in RFRA cases); *Fazaga*, 965 F.3d at 1060 n.42 (same).

Under the two-prong framework for analyzing qualified immunity, officials are shielded from money damages "unless a plaintiff pleads facts showing, (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Taylor v. Reilly*, 685 F.3d 1110, 1113 (D.C. Cir. 2012) (quoting *al-Kidd*, 563 U.S. at 735). Courts have discretion to decide which prong of the analysis to tackle first. *Id.* Once a defendant invokes qualified immunity, however, it is the plaintiff's burden to demonstrate that the doctrine does not apply. *Palmieri v. United States*, 896 F.3d 579, 586 (D.C. Cir. 2018).

As shown below, Plaintiffs fail to satisfy either prong of qualified immunity. They fail to plausibly allege that the Administrator, through his personal actions, imposed a substantial burden on their religious exercise (prong 1) and they fail to plausibly allege any violation of a clearly established right under RFRA (prong 2).

### 1. Plaintiffs do not plausibly allege the Administrator personally violated their rights.

The Court should dismiss the personal-capacity claim for damages against the Administrator because the First Amended Complaint entirely fails to allege any facts showing that the Administrator personally participated in any RFRA violation. The first prong of the qualified immunity analysis requires courts to analyze whether the complaint alleges that the individual government official was personally involved in the purported violation. *See Saucier*, 533 U.S. at 201 (assessing whether "the facts alleged show the *officer's conduct* violated a constitutional right") (emphasis added). This is because a government official is "only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see also Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (plaintiff asserting Section 1983 claim "must directly plead and prove that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'") (quoting *Iqbal*, 556 U.S. at 676).

In *Iqbal*, the plaintiff claimed he was deprived of various constitutional protections while in federal custody. His complaint against numerous high-level officials alleged these officials adopted an unconstitutional policy that subjected him to harsh conditions of confinement on account of his race, religion, or national origin. The Supreme Court disagreed and found that the plaintiff failed to "nudge[] [his] claims . . . across the line from conceivable to plausible," as it included nothing but "bare assertions," specifically noting the complaint lacked "factual allegation[s] against" the individual defendants other than accusing them of "adopting a policy." *Iqbal*, 556 U.S. at 681, 83.

Similar to *Iqbal*, Plaintiffs failed to set forth factual content that would allow this Court to reasonably infer that the Administrator is personally liable for the alleged actions. The D.C. Circuit and this court have routinely applied the requirement that the complaint set forth individualized

13

allegations in the RFRA context. *See Bundy v. Sessions*, 812 F. App'x 1, 2 (D.C. Cir. 2020) (unpublished) (requiring plaintiff to plausibly allege each defendant's personal participation in authorizing raid, arrest, and prosecution in order to state a RFRA claim, "pure vicarious liability . . . is not sufficient to state a claim under RFRA.") (quoting *Patel v. Bureau of Prisons*, 125 F. Supp. 3d 44, 55 (D.D.C. 2015)); *Curry v. Gonzales,* No. 07-cv-0199, 2007 WL 3275298, at *1 (D.D.C. Nov. 6, 2007) (dismissing RFRA and *Bivens* claims where plaintiff failed to allege that "high-level officials were personally and directly involved in the misdeed"); *Hueter v. Kruse*, No. 1:20-cv-03686 (TNM), 2022 WL 823066, at *4, *4 n.5 (D.D.C. Mar. 18, 2022) (finding plaintiff failed to state a claim when he never alleged that "the Secretary 'participated in any decision or approved any policy [] related to [this] case,'" and that "vicarious liability alone cannot state a claim under RFRA.") (quoting *Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993)).

In this case, Plaintiffs' RFRA claim against the Administrator rests almost entirely on the bare bones allegation that the Administrator "is responsible for implementing the COVID-19 vaccine policy and bears ultimate responsibility for the Department's actions against Plaintiff[s]." Am. Compl. ¶ 6. This allegation is readily recognized as the bare and formulaic assertion *Iqbal* rejects.  Plaintiffs do not claim the Administrator personally took any action that violated any constitutional or statutory right.

The closest Plaintiffs come to a specific allegation is on page 6, where they allege that Thomas's "managers, co-workers, and even [the Administrator]" spoke ill of unvaccinated people, to include "wishing they would die and wanting them fired, blaming them for prolonging the epidemic or making them sick . . . ." Am. Compl. ¶ 20, page 6.  Plaintiffs never allege what the Administrator actually said. Setting aside whether the alleged (unspecified) comments are even actionable under RFRA, Plaintiffs nowhere allege that the comments interfered in any way with

14

Thomas or the other plaintiffs' ability to exercise their religion. Therefore, Plaintiffs have failed to show the Administrator personally participated in any violation of their rights under RFRA, and the Court should dismiss Plaintiffs' RFRA claim on this basis alone.

> **2. Plaintiffs fail to plausibly allege that the COVID-19 policies substantially burdened their exercise of religion.**

Under prong one of the qualified immunity analysis, the Court must determine if Plaintiffs have plausibly alleged facts showing the violation of a statutory or constitutional right. *al-Kidd*, 563 U.S. at 735. Not only have Plaintiffs failed to allege the personal involvement of the Administrator, but they have also failed to allege the violation of a statutory right as required under prong one of qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). This second critical failure is evidenced by the First Amended Complaint's failure to plead how the COVID-19 vaccination and testing policies substantially burdened Plaintiffs' exercise of religion.

RFRA provides that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the challenged conduct is (1) "in furtherance of a compelling government interest," and (2) "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1. "A person who brings a challenge under RFRA bears the initial burden of proving that (1) the Government's policy or action implicates [their] religious exercise, (2) the relevant religious exercise is grounded in a sincerely held religious belief, and (3) the policy or action substantially burdens that exercise." *Frederick Douglass Found., Inc. v. D.C.*, 531 F. Supp. 3d 316, 342 (D.D.C. 2021).

It is not enough that a plaintiff has a religious motivation. *See Mahoney v. U.S. Marshals Serv.*, 454 F. Supp. 2d 21, 38 (D.D.C. 2006) (finding that plaintiffs did not allege that their religious exercise had been substantially burdened as they did not allege that engaging in speech about religion "is part of the exercise of their religion" and "[m]ost importantly" plaintiffs did not allege

15

their "religion compels them to engage in this speech at the time and place and in the manner at issue here."). The mere "existence" of religious beliefs, "and 'even the sincere desire to act in accordance with [them]' is 'not enough to sustain a [RFRA] claim.'" *Frederick Douglass Found.*, 531 F. Supp. 3d at 343 (quoting *Archdiocese of Wash. v. Washington Metro. Area Transit Auth.*, 281 F. Supp. 3d 88, 114 (D.D.C. 2017), *aff'd*, 897 F.3d 314 (D.C. Cir. 2018)); *see also Mahoney*, 454 F. Supp. 2d at 38 ("It is not the case that every activity which could be cast as 'religiously motivated' is the kind of exercise of religion protected by RFRA."). A plaintiff's RFRA allegation fails unless the plaintiff demonstrates that the challenged action substantially burdened the plaintiff's exercise of religion. *See, e.g.*, *Henderson v. Kennedy*, 253 F.3d 12, 17 (D.C. Cir. 2001) (rejecting RFRA claim where plaintiffs did "not suggest that their religious beliefs demand that they sell t-shirts in every place human beings occupy or congregate"); *Archdiocese of Wash.*, 897 F.3d at 333 ("But the Archdiocese has not alleged that its religion requires displaying advertisements on WMATA's buses promoting the season of Advent, much less the display of any advertisements at all."); *see also Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1286, 1290-91 (11th Cir. 2012) (granting qualified immunity on prong one because record showed plaintiff was terminated for her desire to *tell* same-sex relationship clients she could not counsel them because of her religious beliefs, not for the beliefs themselves); *Guam v. Guerrero*, 290 F.3d 1210, 1223 (9th Cir. 2002) (holding that Guam's controlled substance statute did not pose substantial burden under RFRA because "Rastafarianism does not require importation of [marijuana].").

"A substantial burden exists when government action puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Kaemmerling v. Lappin*, 553 F.3d 669, 677 (D.C. Cir. 2008) (quoting *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718

16

(1981)). An inconsequential or *de minimis* burden on a religious practice or a burden on an activity unimportant to a religious scheme does not rise to the level of a substantial burden. *Id.*; *see also De Béarn v. United States*, 237 A.3d 105, 113 (D.C. 2020) ("Not just any imposition on religious exercise creates a substantial burden; a burden must have some degree of severity to be considered substantial.") (citations omitted) (collecting cases); *Perrier-Bilbo v. United States*, 954 F.3d 413, 432 (1st Cir. 2020) ("[N]ot every imposition or inconvenience rises to the level of a 'substantial burden.'") (collecting cases). Substantial burden is a question of law for the court to decide. *Ferguson v. Owen*, No. CV 21-02512 (RC), 2022 WL 2643539, *5 (D.D.C. July 8, 2022), *reconsideration denied*, No. CV 21-2512 (RC), 2023 WL 2384394 (D.D.C. Mar. 6, 2023), *aff'd*, No. 23-5102, 2024 WL 120099 (D.C. Cir. Jan. 11, 2024), *hearing in banc denied*, No. 23-5102, 2023 WL 3765923 (D.C. Cir. June 1, 2023), *aff'd*, No. 23-5102, 2024 WL 190099 (D.C. Cir. Jan. 11, 2024). The substantial burden focuses on whether the regulation "'force[d plaintiffs] to engage in conduct that their religion forbids or . . . prevents them from engaging in conduct their religion requires.'" *Mahoney v. Doe*, 642 F.3d 1112, 1121 (D.C. Cir. 2011) (quoting *Henderson*, 253 F. 3d at 17). This focus prevents "RFRA claims from being reduced into questions of fact, proven by the credibility of the claimant." *Id.*; *see also Henderson*, 253 F. 3d at 17 ("To make religious motivation the critical focus is, in our view, to read out of RFRA the condition that only substantial burdens on the exercise of religion trigger the compelling interest requirement.").

Each plaintiff applied for a religious exemption to the vaccination requirement.[6] Am. Compl. at ¶ 9; ¶ 15, page 4; ¶ 23, page 4; ¶ 18, page 5.   Thomas and Effinger also applied for

---

[6] As one court has observed, because individuals had the option to receive a COVID-19 vaccine or provide a negative COVID-19 test, COVID-19 testing requirements such as those at issue here "[are not] used to *burden* religion, but instead give[] those of religious conviction the *benefit* of freely practicing their religious conviction to refuse the vaccine." *Klaassen v. Trs. of Ind. Univ.*,

religious exemptions from the testing requirement. *Id.* at ¶ 24, page 4; ¶ 22, page 6. Barth, Culley, and Thomas allege a sincerely held religious belief against the COVID-19 vaccination that federal agencies like NASA began implementing in response to the President's September 2021 Executive Order. Am. Compl. at ¶ 10, page 3; ¶ 16, page 4; ¶¶ 13-17, page 5. Thomas also alleges a sincerely held religious belief against the COVID-19 testing policy. *Id.* at ¶¶ 20-21, page 5. Effinger does not articulate any such beliefs. However, none of the Plaintiffs allege that they were ever required to vaccinate while their requests were pending. On January 21, 2022, a federal court in the Southern District of Texas enjoined the federal employee vaccination requirement nationwide. *Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826, 836–37 (S.D. Tex. 2022), *vacated and remanded*, 30 F.4th 503 (5th Cir. 2022), *reh'g en banc granted*, *opinion vacated*, 37 F.4th 1093 (5th Cir. 2022), *on reh'g en banc*, 63 F.4th 366 (5th Cir. 2023), *and aff'd*, 63 F.4th 366 (5th Cir. 2023). In light of that injunction, NASA suspended its vaccination requirement, and it put a pause on adjudicating requests for exemptions. NASA COVID-19 Response Plan & Guidelines for a Safe Workplace, NASA (Dec. 6, 2022), *available at* https://www.nasa.gov/wp-content/uploads/2023/07/nasa-covid-safety-plan-update-12.06.22-1.pdf.[7] Since then, the vaccine requirement has been repealed by Executive Order 14,099. Exec. Order 14,099, 88 Fed. Reg. 30,891 (May 9, 2023).

As to the testing requirement, only Thomas articulates a religious objection, and she does not allege she was ever disciplined or turned away from her work location due to her religious

---

549 F. Supp. 3d 836, 890 (N.D. Ind. 2021), *vacated and remanded on mootness grounds*, 24 F.4th 638 (7th Cir. 2022).

[7] In accordance with Federal Rule of Evidence 201, the Court may take judicial notice of an agency's policies and procedures and other information posted on its official public website. *See Kelleher v. Dream Catcher, L.L.C.*, 221 F. Supp. 3d 157, 160 n.2 (D.D.C. 2016) (citing *Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 34 (D.D.C. 2014)).

18

objection to COVID-19 testing. And for good reason. On March 13, 2022, the Center where Thomas worked announced it had suspended the testing requirement for unvaccinated employees due to the "Low" COVID-19 status at the Center. Ex. 3, Email from Wyche to Civil Servants, dated Mar. 13, 2022. Four days later, on March 17, 2022, Thomas alleges she submitted a request for a religious exemption from the testing policy. Consequently, the First Amended Complaint fails to plausibly allege that Thomas was ever required by NASA to vaccinate or test, and for this reason, Thomas has not plausibly alleged a substantial burden on her ability to exercise her religion.

In a similar matter, a federal district court found that the plaintiffs' allegations of a RFRA violation based on masking and testing requirements failed. *Arzamendi v. Austin*, No. 4:23-CV-0770-P, 2024 WL 1641962, at *3 (N.D. Tex. Apr. 16, 2024). In *Arzamendi*, a purported class of Department of Defense (DoD) employees sued high-ranking officials, claiming that DoD's implementation of COVID-19 vaccine and testing policies violated, among other things, their rights under RFRA. *Id.* The court disagreed, concluding the claims were moot but also finding that plaintiffs failed to plausibly "allege *how* masking and testing in and of themselves violated their fundamental religious beliefs—only that they did." *Id.* (internal citations omitted) (emphasis in original). The same holds true here because Plaintiffs, like the plaintiffs in *Arzamendi*, have failed to allege *how* masking or testing violated their religious beliefs. Plaintiffs must be able to articulate that in order to proceed with their suit. *See United States v. Bauer*, 84 F.3d 1549, 1559 (9th Cir. 1996) ("It is not enough in order to enjoy the protections of the Religious Freedom Restoration Act to claim the name of a religion as a protective cloak. Neither the government nor the court has to accept the defendants' mere say-so."). Accordingly, because Plaintiffs "fail to connect their

19

objections to *masking and testing* to their belief system, those claims must . . . fail[,]" *Arzamnedi*, 2024 WL 1641962, at \*4, and that failure warrants dismissal.

Plaintiffs have not alleged a plausible claim that the COVID-19 vaccination and testing policies substantially burdened their exercise of religion. They fail to allege any burden, much less a substantial burden, on their exercise of religion. Because they are unable to show a substantial burden on their religious exercise, Plaintiffs have failed to plausibly allege a RFRA claim. *Kaemmerling*, 553 F.3d at 677. Thus, the Administrator should be granted qualified immunity and Plaintiffs' RFRA claim should be dismissed.

### 3. Plaintiffs fail to plausibly allege the violation of a clearly established right under RFRA.

The Administrator is further entitled to qualified immunity under prong two because it was not clearly established that his alleged conduct—overseeing a federal agency that implemented official government vaccination and testing policies during a worldwide pandemic—violated RFRA.

Under the second prong of qualified immunity, an official is entitled to dismissal unless the asserted right was clearly established, which means that at the time of the officer's conduct, it was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation omitted). A plaintiff has the burden to show that the right was clearly established. *Daugherty v. Sheer*, 891 F.3d 386, 390 (D.C. Cir. 2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "It is not enough that the rule is suggested by then-existing precedent." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018). If "a reasonable officer might not have known *for certain* that the conduct was unlawful" in light of pre-existing law, then he is immune from liability. *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017) (emphasis added). The Supreme Court "ha[s] repeatedly told courts . . . not to define clearly

established law at a high level of generality." *Id*. Instead, "the dispositive question is whether the violative nature *of particular conduct* is clearly established." *Abbasi*, 582 U.S. at 151 (cleaned up) (emphasis in original); *Wesby*, 583 U.S. at 63 ("The 'clearly established' standard . . . requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him."). The "clearly established" analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 577 U.S. at 12 (cleaned up). While there need not be "a case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. Consistent with this guidance, courts have frequently granted qualified immunity in RFRA cases at the motion to dismiss stage where there was no controlling precedent that would have put the defendant on notice that their conduct violated the statute.[8]

Plaintiffs fail to plausibly allege that NASA's implementation of COVID-19 vaccination and testing policies violated clearly established law. Plaintiffs can identify no precedent clearly establishing that the "particular conduct" alleged in the First Amended Complaint violated their rights under RFRA. The Administrator is protected by qualified immunity because the lawfulness of Executive Order 14,043 under RFRA was an "open legal question[]" from the time it was issued on September 9, 2021, until a federal court blocked its enforcement on January 21, 2022. *al-Kidd*,

---

[8] *See, e.g.*, *Rasul*, 563 F.3d at 533 n.6 (application of RFRA to noncitizens detained abroad); *Fazaga*, 965 F.3d at 1062 (covert surveillance allegedly conducted on the basis of religion); *Lebron*, 670 F.3d at 557 (application of RFRA to enemy combatants); *Cooper v. True*, No. 16-cv-02900-MJD-KMM, 2017 WL 6372651 (D. Minn. Dec. 12, 2017) (prison warden's allegedly inadequate request to transfer an inmate to a facility where he could better participate in his faith); *Brown v. Bureau of Prisons*, No. 3:14-cv-681 (RNC), 2017 WL 1234104, at *2 (D. Conn. Mar. 31, 2017) (pat-down search of a Muslim female inmate by a male guard); *Fernandez-Torres v. Watts*, No. 2:16-cv-24, 2017 WL 9485591, at *3 (S.D. Ga. Jan. 30, 2017), *report and recommendation adopted*, 2017 WL 1173923 (S.D. Ga. Mar. 29, 2017) (prisoner's request to receive religious items from unapproved vendors).

563 U.S. at 743. Just prior to the nationwide injunction issued in *Feds for Medical Freedom*, 581 F. Supp. 3d 826, multiple courts rejected claims that Executive Order 14,043 violated the Free Exercise Clause or RFRA. *See Navy Seal 1 v. Biden*, 574 F. Supp. 3d 1124, 1129 (M.D. Fla. 2021); *Donovan v. Vance*, 576 F. Supp. 3d 816, 826 (E.D. Wash. 2021), *aff'd in part, appeal dismissed in part and remanded*, 70 F.4th 1167 (9th Cir. 2023). And *Feds for Medical Freedom* itself enjoined enforcement of Executive Order 14,043 *not* because the vaccine mandate violated RFRA or the Free Exercise Clause (a claim not raised in the case), but because the mandate exceeded the President's statutory authority to regulate Executive Branch employment policies. 581 F. Supp. 3d at 835-36. At bottom, there was no legal precedent clearly establishing that Executive Order 14,043 violated RFRA at the time NASA implemented COVID-19 vaccination and testing policies. And therefore, qualified immunity shields the Administrator from personal liability based on any claim that NASA's implementation of Executive Order 14,043 violated RFRA. *See Driever v. United States*, No. CV 19-1807 (TJK), 2021 WL 1946391, at *4 (D.D.C. May 14, 2021) (dismissing RFRA claim where plaintiff cited no precedent to support her assertion that right was clearly established).

The Administrator likewise is not aware of any controlling precedent that would have clarified "beyond debate" that implementing COVID-19 testing policies violated RFRA. The absence of controlling precedent is sufficient to warrant qualified immunity for the defendant. *See Palmieri*, 896 F.3d at 586; *Wilson v. Layne*, 526 U.S. 603, 614 (1999) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken.") (quoting *Anderson*, 483 U.S. at 639). Given the absence of any controlling case law establishing "beyond debate" that NASA's

22

implementation of a COVID-19 testing policy during a global pandemic violated RFRA, no reasonable official in the Administrator's position would have known—much less "known for certain"—that his conduct was unlawful. *Abbasi*, 582 U.S. at 152. Accordingly, Plaintiffs' RFRA claim is subject to dismissal on prong two of qualified immunity.

### III.     Money Damages against the Administrator is Not "Appropriate Relief" in this Particular Case.

Plaintiffs' RFRA claim against the Administrator is based entirely on NASA's implementation of COVID-19 policies mandated by Executive Order 14,043. In doing so, Plaintiffs challenge conduct that was required of the Administrator by official Executive Branch policy. In other words, Plaintiffs seek money damages from the Administrator in his personal capacity for faithfully executing an official government policy. For that alleged "misconduct," damages are not "appropriate relief" under RFRA.

In *Tanzin*, the Supreme Court clarified that RFRA "permits litigants, *when appropriate*, to obtain money damages against federal officials in their individual capacities." 592 U.S. at 52 (emphasis added).  But what "relief" is "appropriate" is "'inherently context dependent.'"  *Id*. at 49 (quoting *Sossamon v. Texas*, 563 U.S. 277, 286 (2011)). Thus, courts considering a RFRA claim against individual federal officers must assess whether damages are "[s]pecially fitted or suitable, proper" to the specific claim at issue.  *Id*. at 48. Plaintiffs' RFRA claim seeking damages against the Administrator for faithfully implementing Executive Branch policy differs significantly from the claims in *Tanvir*.

Permitting damages against federal officials under these circumstances creates the quintessential "unenviable Catch-22": follow policy and incur potential individual liability or deviate from it at your peril.  *Arenas v. Calhoun*, 922 F.3d 616, 621 (5th Cir. 2019). "The Constitution does not place officials in that quandary," *id.*, nor did Congress in enacting RFRA.

23

This is particularly so where, as here, the COVID-19 vaccine and testing requirements did not suffer from any "obvious" constitutional or other legal "defect" that would have put the Administrator on notice that adhering to Executive Branch policy would violate Plaintiffs' exercise of religion under RFRA. *See Taylor v. Nelson*, 2022 U.S. App. LEXIS 21352, *5 (5th Cir. August 2, 2022) ("[N]onpromulgating officials enforcing [a] policy act reasonably so long as the policy itself does not itself suffer from an 'obvious' constitutional defect.").

After all, individual-capacity suits for damages are intended to deter officials from engaging in clearly unlawful conduct. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2021) ("*Bivens*' core purpose [is] deterring individual officers from engaging in unconstitutional wrongdoing."). But permitting damages here would deter lower-level officials from "properly discharg[ing] their duties" by following policy—promulgated by higher-ranking officials with the assistance of counsel—and force them, instead, to make speculative determinations about the lawfulness of a neutral nationwide policy in individual context-specific situations, like this one. *See Ziglar v. Abbasi*, 582 U.S. 120, 141 (2017) (declining to allow damages against federal officials because "the burden and demand of litigation might well prevent them . . . from devoting the time and effort required for the proper discharge of their duties"); *see also Henley v. Simpson*, 527 F. App'x 303, 307 (5th Cir. 2013) (per curiam) (dismissing individual-capacity claims for damages under Fair Labor Standards Act against state officials who followed an allegedly unconstitutional policy because "the risk of personal liability for implementing a State policy would guarantee no rational official would assume Defendants' state-office positions").  Thus, the Court should decline Plaintiffs' request to impose personal-capacity damages against the Administrator based on NASA's implementation of Executive Branch COVID-19 policies.\

**CONCLUSION**

For the reasons stated above, the Administrator respectfully requests the Court grant this

motion and dismiss the personal-capacity damages claim against him with prejudice.

Dated: December 18, 2024              Respectfully submitted,

                                      BRIAN M. BOYNTON
                                      Principal Deputy Assistant Attorney General

                                      C. SALVATORE D'ALESSIO, JR.
                                      Director, Torts Branch

                                      REGINALD M. SKINNER
                                      Senior Trial Attorney, Torts Branch

                                      */s/ Shmuel Bushwick*
                                      SHMUEL BUSHWICK
                                      Trial Attorney
                                      NJ Bar 073632013, under LCvR 83.2
                                      Torts Branch, Civil Division
                                      United States Department of Justice
                                      P.O. Box 7146, Ben Franklin Station
                                      Washington, DC 20044
                                      Phone: (202) 305-0401
                                      Fax: (202) 616-4314
                                      E-mail: Shmuel.Bushwick@usdoj.gov

                                      *Counsel for Bill Nelson in his Individual Capacity*

25